JURY TRIAL DEMANDED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **Jeffco Estates MHC, LLC,** | Case No. 4:_____ |
| Plaintiff, | |
| vs. | |
| **City of Arnold Board of Adjustment** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| and | |
| **City of Arnold**, | |
| Defendants. | |

For its Complaint against Defendants, the City of Arnold Board of Adjustment (the "Board") and the City of Arnold (the "City"), Plaintiff Jeffco Estates MHC, LLC ("Plaintiff" or "Jeffco Estates") states and alleges as follows:

### INTRODUCTION

1.     This is an action to uphold Plaintiff's right to continue using its property in the City of Arnold as a manufactured home community, as such property has been used since at least 1968, including all associated or related uses that provide a source of affordable housing within the City.

2.     While Defendants have attempted to regulate Jeffco Estates out of existence by (among other things) unlawfully denying applications to install new manufactured homes in the community, Plaintiff has legal nonconforming use rights under federal law, Missouri law, and the City's Code that allow Plaintiff to continue using the property as a manufactured home community.

3.     The City and the Board, however, erroneously decided that Plaintiff must conform its property to certain requirements that effectively prevent Plaintiff from continuing to use the

property as a manufactured home community, that impose unconstitutional conditions on the use of its property, and that—if allowed to continue—would prevent Plaintiff from actually and effectively ever installing a new manufactured home within the community while leaving City residents without this source of affordable housing.

4.      Defendants have been and are arbitrarily, capriciously, and without support in law or fact using the full weight of their municipal authority to eliminate manufactured home communities from the City.

5.      By this Complaint, Plaintiff seeks a judicial determination that Plaintiff may continue to use its property as a manufactured home community in its entirety as a legal nonconforming use, with all associated uses, rights, and benefits. Plaintiff also seeks recovery for the monetary harm caused by the City's unlawful interference with Plaintiff's property, contracts, and/or business interests.

## PARTIES

6.      Plaintiff Jeffco Estates MHC, LLC is a Missouri limited liability company, with its registered office located at 221 Bolivar Street, Jefferson City, MO 65101 and doing business in the City.

7.      Defendant City of Arnold is a municipal corporation organized under the laws of the State of Missouri.  It can be served via Mayor Ron Counts, per Mo. R. of Civ. P. 54.13.

8.      Defendant City of Arnold Board of Adjustment was established pursuant to the City of Arnold Code Section 405.240 and has the authority to reverse or affirm zoning decisions on behalf of the City. It can be served via Chair Jonathan Giallanzo, per Mo. R. of Civ. P. 54.13.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over the parties, all located or doing business in Jefferson County, Missouri, which is part of this District.

10.     This Court has original federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff brings federal causes of action pursuant to 42 U.S.C. § 1983; 28 U.S.C. § 2201, et seq. (the Declaratory Judgment Act); and the U.S. Constitution. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to address Plaintiff's state law claims.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are located within the Eastern District of Missouri and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Missouri.

## FACTUAL ALLEGATIONS

*Background*

12.     Manufactured housing is generally less expensive than traditional single-family homes or other residential housing and provides a path to home ownership that may otherwise allude individuals of a certain income level.

13.     As a result, manufactured home communities are often subject to misunderstandings, assumptions, unfounded fears, and prejudices about the residents who live within these communities and can find themselves the target of unjustified opposition.

14.     Plaintiff owns property in the City of Arnold consisting of a manufactured home community located at 654 Jeffco Boulevard, Arnold, MO 63010 and known as Jeffco Estates (the "Property").[1]  It owns the manufactured home community situated on the Property.

---

[1] The legal description for the Property is attached to this Complaint as Exhibit 6.

15.     Together with other manufactured home community owners in the City, Jeffco Estates offers a source of affordable housing not otherwise available within the City.

16.     The Property is currently zoned as MHD-Mobile Home District. Public records indicate that the Property was being used as a manufactured home community by at least 1968, four years before the City of Arnold was incorporated. The first City zoning map, drafted on June 30, 1977, is the first document identifying Jeffco Estates as being zoned MHD. The Property is still zoned as MHD-Mobile Home District.

17.     The restrictions and requirements for properties zoned MHD have changed over time, resulting in many elements of Jeffco Estates not conforming to the now current MHD requirements as outlined in the Code but qualifying for exceptions to these requirements as legally existing nonconforming uses.

18.     As of the date of this Complaint, Plaintiff continues to use the Property as a manufactured home community and has never ceased using the Property as a manufactured home community. Within the community, there are about 144 lots on which manufactured homes can be placed.

19.     As of the date of this Complaint, approximately 30% of these lots are vacant of homes; approximately 35% of the lots are vacant of renters and homes; and approximately 5% of the lots have vacant homes, at least some of which the City desires to condemn and will not allow to be renovated or repaired.

20.     Plaintiff has attempted to fill these lots and vacant homes through the efforts described in this Complaint, which efforts have been denied by Defendants, who have made it impossible to upgrade lots and/or homes within the community while also targeting enforcement

efforts at the Property and manufactured home communities within the City more broadly without any legitimate or rational purpose.

### *Plaintiff's Applications to Install Manufactured Homes*

21.     Starting in the fall of 2021 and through May 11, 2022, Plaintiff applied for five building permits (the "Applications") to allow installation of replacement manufactured homes, each of which sits on top of a concrete pad on a lot within the Property. The Applications were ultimately denied by the City on May 11, 2022, through the City's Community Development Director. The letter denying the Applications is attached to this Complaint as Exhibit 1, dated May 11, 2022.

22.     The City denied the Applications on a variety of grounds. The Applications for 2139 Park Drive, 2163 Lake, and 2163 Park Drive did not rely on lawful nonconformities. Despite this, all of the denials relied on Section 405.070(G)(1)(d)(1) and/or Section 405.070(G)(1)(d)(2) of the City Code.

23.     In summary, the City relied on these sections of the City Code to declare that Plaintiff could not (1) place a larger manufactured home on the existing concrete pad(s), (2) expand or modify the existing concrete pads, or (3) cure various setback requirements.

24.     As a result of the denials, Plaintiff has been prevented from installing or replacing manufactured homes on these lots and losing out on the associated rent—denying Plaintiff the full use and benefit of the Property. The City is preventing Plaintiff from using these lots—and thus being able to fully operate as a functional manufactured home community—due to an erroneous interpretation of the City Code and/or by insisting that Plaintiff meet unlawful and unconstitutional requirements while also preventing Plaintiff from being able to take the action that would bring these lots and the Property into compliance with those purportedly applicable requirements.

25.     Upon information and belief, the Board's denials were predetermined and part of Defendants' efforts to eliminate manufactured home communities from the City.

26.     Further, upon information and belief, other similarly situated property owners are not prevented from fully operating as housing facilities because they are not subject to the same requirements or targeted enforcement to which Plaintiff has been subject.

### Applicable Statutes, City Ordinances, and Building Code Provisions

27.     The City Code defines a non-conforming Land Use or Structure as "[a] land use or structure which existed lawfully on the date that this zoning ordinance or any amendment thereto became effective and which fails to conform to one (1) or more of the applicable regulations in the zoning ordinance or amendment thereto." Code Chapter 405.

28.     It states the intent of the nonconforming use ordinance is to "permit these non-conformities to continue, except as delineated herein, until they are removed, cease operation, or damaged beyond fifty percent (50%), but not to encourage their survival." Code § 405.070.

29.     Further, the City Code provides "[i]t is further the intent of this Chapter that non-conformities shall not be enlarged upon, expanded, or extended, nor be used as grounds for additions, expansions of operations of the use, and/or adding other structures or uses prohibits elsewhere in the same district." *Id.*

30.     The City Code specifically provides for Non-Conforming Mobile Home Parks within MHD Mobile Home Districts:

G.  Non-Conforming Mobile Home Parks And Non-Conforming Mobile Homes.  All non-conforming mobile home parks and other non-conforming mobile homes lawfully existing at the effective date of the adoption of this Chapter that would not be allowed in the zoning district or under the terms of this Chapter may be continued so long as they remain otherwise lawful, subject to the following special provisions:

1. Non-Conforming Mobile Home Parks Within "MHD" Mobile Home Districts.  Mobile home parks located in "MHD"

6

Mobile Homes Districts that are non-conforming due to lot size, setback, or other such characteristics shall be subject to the following special provisions:

a.      Shall not be expanded or modified expect in conformance with the guidelines of the "MHD" Mobile Home District.

b.      Non-conforming mobile home parks or parts thereof that are made to conform with the regulations of the "MHD" Mobile Home District shall thereafter be required to conform and shall not be altered to create a non- conforming use.

c.      Any non-conforming mobile home park destroyed by any means to an extent of more than fifty percent (50%) of its reconstruction at the time of destruction, including streets, pads, and utilities, shall not be reconstructed except in conformance with the provisions of the "MHD" Mobile Home District.

d.      Notwithstanding other provisions of the "MHD" Mobile Homes District regulations to the contrary, mobile home parks that are located within "MHD" Mobile Home Districts that existed at the time of adoption of this Chapter shall meet the following minimum requirements:

(1)      Mobile homes shall not be located closer than ten (10) feet to any street right-of-way, road easement, or street that is located within the boundaries of the mobile home park.  No mobile home shall be located closer than twenty (20) feet to any street right-of-way or road easement that is located outside the boundaries of the mobile home park.

(2)      Mobile home pads may not be expanded, and larger mobile homes may not be placed in the mobile home park.

(3)      Mobile homes shall be located so that there is a clear space of not less than fifteen (15) feet between it and any other mobile home, building, or structure of any kind, except storage sheds not exceeding ten (10) feet by tent (10) feet in dimension or any required fencing.  Any deck, carport, patio cover, to other appurtenance that is constructed of

combustible material shall be considered to be a part of the mobile home and shall not be located closer than fifteen (15) feet to any other mobile home, building, or structure of any kind.

(4)    For the purposes of this Chapter, the above setback provisions shall be applied without regard to any internal side or rear property lines for lots that are platted within the mobile home park.

Code § 405.070(G)(1)(a)-(d).

31.    City Code Sections 405.090(E) and 515.020(A) provide further regulations for MHD Mobile Home Districts within the City.

**_Plaintiff Appeals the City's Denial of the Applications_**

32.    In July 2022, Plaintiff appealed the City's denial of the Applications to the Board. A copy of this original appeal petition is attached as Exhibit 2.

33.    On or about August 8, 2022, Plaintiff amended its appeal petition to the Board. A copy of this amended appeal petition is attached as Exhibit 3.

34.    Following communications with representatives of the City, on August 16, 2022, Plaintiff amended its appeal petition to the Board. A copy of this amended appeal petition is attached as Exhibit 4.

35.    On August 24, 2022, Plaintiff presented its appeal of the City's denial of the Applications to the Board at a scheduled hearing. The Board denied Plaintiff's appeal.

36.    Plaintiff has thus been aggrieved by decisions of the Zoning Enforcement Officer and has exhausted its administrative remedies.

37.    On August 25, 2022, the City sent a letter to Plaintiff's counsel confirming the Board's August 24 denial of Plaintiff's appeal pursuant to City Code Section 405.070(G)(1)(d)(1-2). The letter also confirmed the City's appeal process was concluded and the Board's decision

8

may be appealed to the Circuit Court of Jefferson County. A copy of this letter is attached as Exhibit 5.

### *Unjustified Enforcement Targeting Manufactured Home Communities and Affordable Housing*

#### *Alleging a Nuisance While Denying Plaintiff the Ability to Repair It*

38.     After Plaintiff filed its original Petition in Missouri state court (Jefferson County) in September 2022, the City issued a nuisance violation for another manufactured home (not the subject of any of the Applications) on the Property, stating that the home was condemned and needed to be removed.

39.     Plaintiff believes the City's issuance of that nuisance violation to be in retaliation for the filing of its original Petition for the following reasons:

    a.   The City inspector who issued the violation, Jeff Preis, told the community manager of Jeffco Estates that he was instructed by his boss (at the City) to begin performing weekly inspections of Jeffco Estates.

    b.   Upon involvement of Plaintiff's counsel in handling the response to this nuisance violation, the City ceased all communication with Plaintiff or Plaintiff's counsel regarding the alleged nuisance, indicating to Plaintiff that the City did not issue the citation with the goal of correcting the alleged nuisance but rather with the goal or intent to retaliate against Plaintiff.

40.     Plaintiff has since applied for a permit to renovate the home that was the subject of the nuisance violation, which permit was denied because the value of the proposed renovation exceeded the value of the home.

41.     In other words, the City has claimed that at least one home on the Property is a nuisance while also denying Plaintiff the ability to remedy the issue either through renovations (or,

in the case of other homes, simply replacing them)—sentencing the Property to a slow and inevitable decline as Jeffco Estates and/or its residents are prevented from installing new manufactured homes or repairing those that already exist on the Property.

*Denying Would-Be Jeffco Estates Resident Without Due Process*

42.     On information and belief, a resident of Jeffco Estates who wanted to repair or renovate their manufactured home was informed by a City inspector that a building permit would not be granted if the resident applied for the permit because the value of the home was less than the value of the intended repairs.

43.     On information and belief, the City official was provided little to no information on the value of the home at issue or that of the intended renovations and did not receive a written application for a building permit but, rather, provided an on-the-spot, verbal, de facto denial on any permit request the resident would have otherwise made.

44.     Following these interactions with the City inspector, this resident was dissuaded from applying for a building permit, has since vacated the home, and cannot be reached despite multiple attempts by Plaintiff.

45.     As a result of these events and the would-be resident not living in the subject home, Plaintiff has lost months of lot rent that it expected to receive.

*Baseless Enforcement Action Regarding Pets*

46.     In early January 2023, the City—without any basis in the Code or other legal authority—attempted to require Plaintiff to provide a list of residents within its community who keep pets in their separate, privately-owned manufactured homes.

47.     As the City was told, both by Plaintiff's community manager and counsel in the attached Exhibit 7, Plaintiff does not—and is not required to—maintain this information regarding its residents.

48.     Upon information and belief, the City does not subject other similarly situated apartment buildings and other forms of housing to these onerous requirements, which are outside the scope of the City Code.

*Inquiry from City Regarding Development of the Property*

49.     On or around July 1, 2022, a representative of the City called a representative of Plaintiff to ask whether Plaintiff would be interested in selling the Property because, as relayed to Plaintiff, the City had a commercial developer who was interested in redeveloping the Property.

50.     Plaintiff responded that it was not interested in selling the Property.

51.     The Property is located off of Lemay Ferry Road—a main thoroughfare through the City and home to various restaurants, retail, and other commercial developments—and is sandwiched between these types of developments that the City apparently views as more desirable than Plaintiff's manufactured home community.

52.     Based on Defendants' acts as described above, Plaintiff's understanding that the City would like the Property to be developed for other purposes, and otherwise upon information and belief, Defendants have contempt for manufactured home communities and desire to eventually rid the City of manufactured home communities in their entirety and the source of affordable housing that they provide.

53.     Upon information and belief, City officials have previously made comments about wanting to upgrade properties within the City and get rid of manufactured home communities entirely.

### *Plaintiff's Separate State Court Action*

54.    Plaintiff continues to seek a claim for writ of certiorari in state court to reverse the Board's decisions as to the Applications.

55.    Even if Plaintiff is successful in that action, however, nothing would stop Defendants from continuing their unjustified crusade to rid the City of manufactured home communities.

56.    Regardless of the outcome of that separate pending action, therefore, the declaratory and other relief sought through this Complaint is necessary to prevent Defendants from continuing, without justification, to interfere with Plaintiff's constitutional and property rights to maintain the Property as a manufactured home community.

### *The Current Action*

57.    Continued enforcement of the City Code and of the City's decisions and erroneous interpretations will effectively deprive Plaintiff of valuable property rights and prevent it from actually or effectively ever installing another manufactured home and fully operating the Property as a manufactured home community.

58.    The City's decision to deny Plaintiff's Applications, and the Board's subsequent affirmation of these decisions, was erroneous for the following reasons:

    a. First, the part of the City Code relied on by the City in denying Plaintiff's Applications—Section 405.070(G)(1)—only applies to manufactured home communities within the MHD district that are "non-conforming due to lot size, setback, or other such characteristics." The Property, however, has not been established as a nonconforming manufactured home community for purposes of the

Applications, and any reason contained within City Code Section 405.070(G)(1) cannot serve as a basis for denying the Applications.

b.  Moreover, the requirements to be zoned "MHD" Mobile Home District as provided in Section 405.090 do not include a minimum "pad" size requirement, so any pad size requirement cannot serve as a lawful basis for denying any of Plaintiff's Applications for this additional reason.

c.  Second, the City's denials of Plaintiff's Applications fail to follow the City Code regarding lawful nonconforming uses.

d.  Section 405.030 of the City Code defines a nonconforming land use or structure as "[a] land use or structure which existed lawfully on the date that this zoning ordinance or any amendment thereto became effective and which fails to conform to one (1) or more of the applicable regulations in the zoning ordinance or amendment thereto."

e.  The same section defines "structure" as:

> Any assembly of material forming a construction for occupancy or use, excepting, however, utility poles and appurtenances thereto, underground distribution or collection pipes or cables and underground or ground level appurtenances thereto.

f.  The setback and concrete pad requirements relied on by the City in denying the Applications does not directly have to do with a structure but rather other elements associated with structures. However, when applying a nonconforming use or structure to a manufactured home community specifically, the City Code appears to define it as both a park and a "home." Code § 405.070(G).

g.  The City's Code does not define "parts of mobile home parks" or "pads." But "lots" are defined as "a platted parcel of land intended to be separately owned, developed,

and otherwise used as a unit" or "a lot which is part of a subdivision, the plat of which has been legally approved and recorded in the office of the Recorder of Deeds of Jefferson County or a parcel of land which was legally approved, and the deed recorded in the office of the Recorder of Deeds." Code § 405.030 (Definitions).[2]

    h.   The Property does not have multiple individual "lots" as defined in the City Code.

    i.   The City has thus incorrectly applied its own nonconforming use rule (Code § 405.030) in denying the Applications and refusing to allow Plaintiff to continue its lawful nonconforming use of the Property.

59.    In the alternative, the Property as a whole is a conforming use, i.e., used appropriately to its zoning classification as an MHD. The pads are part of the Property. They are not structures under the City Code's definition.

60.    Therefore, the pads are conforming because the Property is conforming. As such, the City cannot apply the nonconforming use special rules in City Code Section 405.070(G).

61.    The City Code, in light of the facts and circumstances set forth above, unreasonably and unconstitutionally prohibits Plaintiff from using its Property for its intended purpose, thus denying Plaintiff the benefit and use of the Property as a manufactured home community.

62.    The current City Code conflicts with the state and federal Constitutions.

63.    Plaintiff requests an order from this Court declaring that the City Code is unconstitutional (on its face and as applied here), that the City Code effects a taking of Plaintiff's

---

[2] In response to this inconsistency, the City has started the process to amend its Code with a definition of "pad." *See* The City of Arnold, Missouri, 2023 Agenda and Minutes, https://www.arnoldmo.org/2023-agendas-and-minutes/ (last accessed February 22, 2023). The relevant Code language at the time of Plaintiff's Applications did not include a definition of the term "pad."

Property, and that Plaintiff be allowed to use all lots within the Property and enjoy the entirety of the manufactured home community and its lawful nonconforming use.

## COUNT I

### Declaratory Judgment – The City Code is Facially Unconstitutional

### (Against Defendant City of Arnold)

64.      Plaintiff incorporates and realleges each of the preceding paragraphs of this Complaint as if fully restated herein.

65.      The City Code—specifically City Code Section 405.070(G)(1)(a)-(d), Section 405.090(E), and Section 515.020(A)—is unconstitutional on its face in that it imposes ex post facto requirements on lawful nonconforming uses of property.

66.      In addition, the City Code, as described above and throughout this Complaint, imposes these requirements on lawful nonconforming uses while restricting property owners from taking the action necessary to bring these elements into compliance.

67.      Alternatively, the City Code, as described above and throughout this Complaint, violates the doctrine of unconstitutional conditions.

68.      These restrictions are arbitrary, capricious, unreasonable, and without substantial relation to public health, safety, and morals; they can serve no legitimate purpose rationally related to the public welfare.

69.      These Code sections violate substantive due process as guaranteed by the Constitutions of the United States of America and the State of Missouri.

70.      A real and justiciable controversy exists between Plaintiff and the City concerning the constitutionality of the City Code.

71.     Accordingly, Plaintiff is entitled to a declaratory judgment that the City Code, as set forth herein, is facially unconstitutional.

## COUNT II

### Declaratory Judgment – The City Code is Unconstitutional as Applied to Plaintiff's Use of the Property

### (Against Defendants)

72.     Plaintiff incorporates and realleges each of the preceding paragraphs of this Complaint as if fully restated herein.

73.     The City's actions have created a substantial and presently existing controversy in that Plaintiff's longstanding and continuous use of its Property was declared unlawful pursuant to the City and Board's application of the City Code.

74.     Plaintiff has a legally protectable interest in the use of its Property in that it has a vested property right to continue a prior lawful nonconforming use.

75.     The justiciable controversy created by the City and Board's actions is ripe for review in that Plaintiff has exhausted its administrative remedies and applicable law grants Plaintiff the right to seek judicial review of the City and Board's actions.

76.     To the extent the City Code is inconsistent with applicable state and federal law regarding lawful nonconforming uses, it is unlawful and imposes ex post facto requirements upon lawful nonconforming elements of the Property.

77.     City Code Sections 405.070(G)(1)(a)-(d) and 405.070(G)(1)(d)(1)-(4) are, as applied to the Applications, unconstitutional and otherwise unlawful because they amount to the imposition of ex post facto requirements upon lawful nonconforming elements of the Property.

78.     In addition, Sections 405.090(E) and 515.020(A), including all subsections therein, are, as applied to the Applications, unconstitutional because they amount to the imposition of ex post facto requirements upon lawful nonconforming elements of the Property.

79.     Alternatively, the City and Board's conduct, as described above and throughout this Complaint, violates the doctrine of unconstitutional conditions.

80.     As set forth above and throughout this Complaint, the City's denials based on these sections of the City Code (and the Board's decision affirming these denials) are not based in fact or evidence; are unreasonable, arbitrary, and capricious; and lack any legitimate purpose.

81.     The use and occupancy of the Property as a manufactured home community as a legal nonconforming use is properly measured in its entirety.

82.     As a result of the foregoing, a dispute ripe for judicial determination is presented to this Court under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure as to the City's denial of Plaintiff's Applications to install manufactured homes on lots within the Property.

83.     A real and justiciable controversy exists between Plaintiff and the City concerning whether Plaintiff's use of the Property as a manufactured home community is a legal nonconforming use.

84.     Accordingly, Plaintiff is entitled to a declaratory judgment that it may continue its lawful nonconforming use of the Property as a manufactured home community.

## COUNT III

### Declaratory Judgment – Taking

### (Against Defendants)

85.     Plaintiff incorporates and realleges each of the preceding paragraphs of this Complaint as if fully restated herein.

86.     The City Code, specifically Section 405.070(G)(1)(a)-(d) (as applied and on its face) and Sections 405.090(E) and 515.020(A), does not substantially advance legitimate state interests and thereby effects a regulatory taking of Plaintiff's Property, for which compensation must be paid.

87.     It is not economically feasible to develop such Property for the uses permitted in the existing City Code as they are presently applied by the Board; accordingly, the land use regulations imposed by the City effect a taking, for which compensation must be paid.

88.     A real and justiciable controversy exists between Plaintiff and the City and the Board concerning the constitutionality of the City Code as outlined herein.

89.     Accordingly, Plaintiff is entitled to a declaratory judgment that the City Code is unconstitutional and effectuates a taking of its Property and requiring the City to justly compensate Plaintiff for the same.

## COUNT IV

### Tortious Interference with a Business Expectancy

### (Against Defendants)

90.     Plaintiff incorporates and realleges each of the preceding paragraphs of this Complaint as if fully restated herein.

91.     Defendants previously regularly approved building permits like those sought through the Applications.

92.     Plaintiff had a reasonable and valid expectancy that Defendants would approve the building permits sought through the Applications and allow Plaintiff to continue its lawful nonconforming use of the Property.

93.     Plaintiff had the right to rely on this reasonable expectancy in preparing to rent out other concrete pads within the Property to owners of manufactured homes.

94.     Defendants' subsequent denial of the building permits was unjustifiable and/or wrongful.

95.     Defendants, after approving building permits in the past, unjustifiably interfered with Plaintiff's business expectancy by thereafter deciding to subsequently impose additional unconstitutional restrictions on the use of Plaintiff's Property.

96.     Defendants' unjustifiable and/or wrongful actions have caused Plaintiff actual damages in the form of lost time, lost income, attorney fees, and court costs.

97.     Plaintiff has the right to seek punitive damages against Defendants.

## <u>COUNT V</u>

**Denial of Plaintiff's Rights to Equal Protection of the Laws in Violation of the Fourteenth Amendment of the United States Constitution: 42 U.S.C. § 1983**

**(Against Defendants)**

98.     Plaintiff incorporates and realleges each of the preceding paragraphs of this Complaint as if fully restated herein.

99.     At all times relevant hereto, the conduct of Defendants and their agents were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

100.    Defendants' agents are employees and/or executives of the City and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

101.    Plaintiff has the right to use its Property free from arbitrary restrictions imposed by biased officials.

102.    Additionally, Plaintiff possesses a liberty interest to engage in whatever legal business it elects to pursue, including the maintenance of a manufactured home community, free from Defendants' interference based solely on the fact that City officials do not like manufactured home communities and want to eliminate this source of affordable housing within the City.

103.    The Board and City executives, employees, or agents have created an unconstitutional policy and/or custom of the City to discourage and prevent the maintenance and existence of Plaintiff's manufactured home community.

104.    By providing an empty, meaningless process, with a pre-determined result (to deny Plaintiff's applications), Defendants impermissibly deprived Plaintiff of its property interest without due process of law.

105.     On information and belief, other similarly situated property owners in the City (which may include, but are not limited to, owners of apartments, condos, or stick-built houses) have not been subject to the same demands. The City and the Board are not applying the Ordinances in an equal manner to similarly situated property owners in the City.

106.    There is no rational basis for the difference in treatment between Plaintiff and similarly situated property owners in the City.

107.    Defendants, through the Board and City employees and/or agents, have treated Plaintiff differently from other similarly situated property owners/renters, constituting disparate treatment that is intentional, irrational, arbitrary, and vindictive.

108.    The City's denial of Plaintiff's requested permits amounts to deprivation of a property rights without procedural due process in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

109.    The City's denial of building permits to Plaintiff is a violation of the right to be free from targeted and selected discrimination without procedural due process of the Due Process Clause of Fourteenth Amendment of the U.S. Constitution.

110.    There are no adequate post-deprivation remedies available to Plaintiff for the denial of building permits for Defendants' targeted and selected discrimination.

111.    Defendants' denial of building permits to Plaintiff is arbitrary, irrational, and unreasonable, bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

112.    Defendants' targeted and selected discrimination is arbitrary, irrational, and unreasonable, bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

113.    Defendants' decision to deny Plaintiff the aforementioned property rights, by imposing requirements which are separate, distinct, and different from those provided by the Ordinances, is in violation of the Fourteenth Amendment.

114.    Defendants and their executives, employees, or agents have created an unconstitutional policy and/or custom to deny Plaintiff the aforementioned property rights, by targeting Plaintiff for selective discrimination.

115.    Defendants, through their executives, employees, and/or agents, knew or should have reasonably known that denying Plaintiff the aforementioned property rights violated Plaintiff's due process rights and other rights under established statutory and constitutional law.

116.    Defendants, through their executives, employees, and/or agents, knew or should have reasonably known that targeting Plaintiff for selective discrimination under the facts and circumstances described herein violated Plaintiff's due process rights and other rights under established statutory and constitutional law.

117.    A reasonable state actor, agent, or official would have known that denying Plaintiff rights under the facts and circumstances described herein violated Plaintiff's due process rights and other rights under established statutory and constitutional law.

118.    Defendants' actions and omissions have prevented Plaintiff from full economic use of the Property.

119.    The above actions have proximately caused Plaintiff substantial damages, including loss of the beneficial use of the Property; lost profits; lost rent; lost business opportunities; loss of the ability to make capital and physical improvements to the Property; and all other incidental and consequential damages.

**WHEREFORE**, Plaintiff prays this Court enter judgment in its favor and against Defendants as follows:

A.    A declaration from this Court that Plaintiff's use of the Property as a manufactured home community is a legal nonconforming use that be allowed to continue under applicable law;

B.    A declaration from this Court that City Code Sections 405.070(G)(1)(a)-(d), 405.090(E), and 515.020(A) are arbitrary; capricious; unreasonable; unrelated to the public health, safety, welfare and morals; and contravene Plaintiff's constitutional rights;

C.    A declaration from this Court that City Code Sections 405.070(G)(1)(a)-(d), 405.090(E), and 515.020(A), to the extent that they prohibit Plaintiff from using the Property as a manufactured home community, are arbitrary; capricious; unreasonable; unrelated to the public

health, safety, welfare, and morals; contravene Plaintiff's constitutional rights; and cannot serve as the basis for actually and effectively denying Plaintiff the ability to install new manufactured homes on the Property;

      D.     A declaration from this Court that that City Code Sections 405.070(G)(1)(a)-(d), 405.090(E), and 515.020(A) fail substantially to advance a legitimate governmental interest and thereby constitute a taking of Plaintiff's Property for which compensation must be made in such amount as might be established at trial of this matter;

      E.     Awarding Plaintiff damages for its loss of the beneficial use of the Property; lost profits; lost rent; lost business opportunities; loss of the ability to make capital and physical improvements to the Property; negative publicity; and all other incidental, consequential, and punitive damages.

      F.     Awarding Plaintiff its costs and expenses incurred herein; and

      G.     For such other and further relief as the Court deems just and equitable.


March 6, 2023

               /s/ *Kendra D. Simmons*
               Kendra Simmons 12988(IA)
               ksimmons@fredlaw.com
               FREDRIKSON & BYRON, P.A.
               111 E. Grand Ave., Suite 301
               Des Moines, IA 50309
               Phone:  (515) 242-8900
               Fax:  (515) 242-8950

               ***Attorney for Plaintiff Jeffco Estates MHC, LLC***