# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFCO ESTATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:23-CV-00282-NCC |
| | ) | |
| CITY OF ARNOLD BOARD OF | ) | |
| ADJUSTMENT, and CITY OF ARNOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 8) and Motion for the Court to Exercise Supplemental Jurisdiction (Doc. 21).  The motions are fully briefed and ready for disposition.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).  For the following reasons, Defendants' Motion to Dismiss (Doc. 8) will be **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion for the Court to Exercise Supplemental Jurisdiction (Doc. 21) will be **DENIED**.

## I. Background[1]

---

[1] Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(b)(6) but, in it, challenge the Court's jurisdiction, which invokes Rule 12(b)(1).  *See* Doc. 8.  With a Rule 12(b)(6) motion to dismiss, the Court accepts as true the facts alleged in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  With a Rule 12(b)(1) motion to dismiss, the Court "must distinguish between a facial attack – where it looks only to the face of the pleadings – and a factual attack – where it may consider matters outside the pleadings."  *Croyle by and through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018).  Here, Defendants challenge the complaint on its face.  Thus, under either standard, the Court looks to the facts alleged in the complaint.  In addition, the Court may consider exhibits attached to the complaint.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).

Plaintiff Jeffco Estates, LLC ("Plaintiff") owns property in Defendant City of Arnold ("City") consisting of a manufactured home community known as Jeffco Estates at 654 Jeffco Boulevard, Arnold, MO 63010 ("Property") (Doc. 1 ¶ 14).  The Property contains 144 lots, of which Plaintiff asserts 30% are vacant of homes, 35% are vacant of renters and homes, and 5% have vacant homes (*id.* ¶¶ 18-19).  The Property is zoned as MHD-Mobile Home District and has been since the first zoning map drafted on June 30, 1977 (*id.* ¶ 16).

As the MHD requirements have changed over time, many elements of the Property have become non-conforming but qualify for exceptions as legally existing non-conforming uses (*id.* ¶ 17).  Section 405.030 of the City Code defines a non-conforming land use or structure as "[a] land use or structure which existed lawfully on the date that this zoning ordinance or any amendment thereto became effective and which fails to conform to one (1) or more of the applicable regulations in the zoning ordinance or amendment thereto" (*id.* ¶¶ 27, 58).  Section 405.070 states that the intent of the non-conforming use ordinance is to "permit these non-conformities to continue, except as delineated herein, until they are removed, cease operation, or [are] damaged beyond fifty percent (50%), but not to encourage their survival" and that "[i]t is further the intent of this Chapter that non-conformities shall not be enlarged upon, expanded, or extended, nor be used as grounds for additions, expansions of operations of the use, and/or adding other structures or uses prohibits [sic] elsewhere in the same district" (*id.* ¶¶ 28-29).

## A. Applications

Plaintiff has attempted to fill the vacant lots and homes on the Property (*id.* ¶ 20).  From the fall of 2021 through May 11, 2022, Plaintiff applied for five building permits to install replacement homes at 2139 Park Dr., 2163 Lake Dr., 2163 Park Dr., 2152 Park Dr., and 2178

Lake Dr. ("Applications") (*id.* ¶ 21; Doc. 1-1).  In a letter dated May 11, 2022 and signed by the

City's Senior Planner, the City denied the Applications (*id.*).  As to 2139 Park Dr., 2163 Park

Dr., 2152 Park Dr., and 2178 Lake Dr., the City stated "In addition to the restriction on increased

pad size, to the extent a replacement mobile home exceeds the size of the home it is replacing,

the proposed replacement would violate the restriction on increasing mobile home size, also

found in §405.070(G)(1)(d)(2)." (Doc. 1-1 at 2-3).  As to 2152 Park Dr. and 2178 Lake Dr., the

City further stated, "The provided site plan shows the proposed mobile home would violate the

required street right-of-way, road easement, or street setback as found in §405.070(G)(1)(d)(1)."

(*Id.*).  Finally, as to 2163 Lake Dr., the City stated, "The provided site plan does not indicate the

location of mobile home structures to the rear of the proposed home. A full and complete

determination on this permit's compliance with the Zoning Ordinance cannot be made without

all necessary information. Please revise the site plan to show all structures in the vicinity of the

proposed home with relevant distance annotations." (*Id.* at 2).

Section 405.070(G) provides:

G. Non-Conforming Mobile Home Parks And Non-Conforming Mobile Homes.
All nonconforming mobile home parks and other non-conforming mobile homes
lawfully existing at the effective date of the adoption of this Chapter that would
not be allowed in the zoning district or under the terms of this Chapter may be
continued so long as they remain otherwise lawful, subject to the following
special provisions:

1. Non-Conforming Mobile Home Parks Within "MHD" Mobile Home
Districts. Mobile home parks located in "MHD" Mobile Homes Districts
that are non-conforming due to lot size, setback, or other such
characteristics shall be subject to the following special provisions:

a. Shall not be expanded or modified expect in conformance with
the guidelines of the "MHD" Mobile Home District.

b. Non-conforming mobile home parks or parts thereof that are made to conform with the regulations of the "MHD" Mobile Home District shall thereafter be required to conform and shall not be altered to create a non-conforming use.

c. Any non-conforming mobile home park destroyed by any means to an extent of more than fifty percent (50%) of its reconstruction at the time of destruction, including streets, pads, and utilities, shall not be reconstructed except in conformance with the provisions of the "MHD" Mobile Home District.

**d. Notwithstanding other provisions of the "MHD" Mobile Homes District regulations to the contrary, mobile home parks that are located within "MHD" Mobile Home Districts that existed at the time of adoption of this Chapter shall meet the following minimum requirements:**

> **(1) Mobile homes shall not be located closer than ten (10) feet to any street right-of-way, road easement, or street that is located within the boundaries of the mobile home park. No mobile home shall be located closer than twenty (20) feet to any street right-of-way or road easement that is located outside the boundaries of the mobile home park.**

> **(2) Mobile home pads may not be expanded, and larger mobile homes may not be placed in the mobile home park.**

> (3) Mobile homes shall be located so that there is a clear space of not less than fifteen (15) feet between it and any other mobile home, building, or structure of any kind, except storage sheds not exceeding ten (10) feet by tent (10) feet in dimension or any required fencing. Any deck, carport, patio cover, to other appurtenance that is constructed of combustible material shall be considered to be a part of the mobile home and shall not be located closer than fifteen (15) feet to any other mobile home, building, or structure of any kind.

> (4) For the purposes of this Chapter, the above setback provisions shall be applied without regard to any internal side or rear property lines for lots that are platted within the mobile home park.

(Doc. 1 ¶ 30) (emphasis added).  Thus, the City denied four of the applications in whole or in part based on subsection (G)(1)(d)(2) prohibiting the expansion of mobile home pads and the placement of larger mobile homes in the mobile home park, and denied two of those same applications in part based on subsection (G)(1)(d)(1) prohibiting the location of mobile homes closer than ten (10) feet to any street right-of-way, road easement, or street that is located within the boundaries of the mobile home park, or closer than twenty (20) feet to any street right-of-way or road easement that is located outside the boundaries of the mobile home park.

### B.  Appeal

In July 2022, Plaintiff appealed the denial of the Applications to Defendant City of Arnold Board of Adjustment ("Board") (*id.* ¶ 32; Doc. 1-2).  The Board was established under Section 405.240 and has the authority to reverse or affirm zoning decisions on behalf of the City (Doc. 1 ¶ 8).  *See also* Doc. 1-2 at 4 (Section 405.240(G) provides "[a]ppeals to the Board may be taken by any person aggrieved… by any decision of the Zoning Enforcement Officer. Such appeal shall be taken within reasonable time as prescribed by the Board by general rule, by filing with the Zoning Enforcement Officer and with the Board a notice of appeal specifying the grounds thereof.").

The Board's appeal application form contains information about how to seek a variance:

**VARIANCES BEFORE THE BOARD OF ADJUSTMENT**
**MINIMUM SUBMITTAL REQUIREMENTS**

Appeals for variances to the Zoning Code and the Storm Water and Erosion Control Ordinance, shall be made to the Board of Adjustment. The following must be submitted no later than twenty-seven (27) calendar days before the meeting you wish to be on.

1. Completed application, fee and the names and address of the legal owners of record of property located within 185 feet of the subject site on mailing labels.

2. A plan, if needed or required, to sufficiently indicate the variance requested.

3. Written petition stating the basis for such appeal, the specific relief sought, and responses to the following:
    ❏ The granting of the variance will not be detrimental to the public safety, health, or welfare or injurious to other property or improvements in the neighborhood in which the property is located.
    ❏ The conditions upon which the request for a variance is based are unique to the property to which the variance is sought, and are not applicable generally to other property.
    ❏ Because of the particular physical surroundings, shape, or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience, if the letter of these regulations are carried out.

4. A Public Hearing is required (see page 47). The applicant must post a sign informing the general public of a public hearing regarding the applicant's request. The sign shall be four feet by four feet (4' X 4') in size, and shall be placed on the property on which the request is subject to. The sign shall be erected at least fifteen (15) days prior to the scheduled hearing date. The copy on the sign shall be legible with lettering no less than four (4) inches in height and not less than one (1) inch in width**. THE APPLICANT IS REQUIRED TO SUBMIT A DATE STAMPED PHOTO OF THE SIGN, SHOWING A TAPE MEASURE INDICATING THE LETTERS ARE NOT LESS THAN FOUR INCHES (4") IN HEIGHT AND NOT LESS THAN ONE INCH (1") IN WIDTH PRIOR TO THE MEETING. THE SIGN MUST BE REMOVED WITHIN TWO DAYS FOLLOWING THE FINAL PUBLIC HEARING.**

(Doc. 1-2 at 3).

Plaintiff did not seek a variance. *See id.* at 4. Instead, Plaintiff asserted the following

constitutional claims in its petition:

The City denied the Applications on a variety of grounds. All of the denials relied on either Section 405.070(G)(1)(d)(1) and/or Section 405.070.(G)(1)(d)(2) of the City of Arnold Municipal Code (the "Code"). The Applicant's position is that the City's denial of the Applications is unlawful and unconstitutional, and hereby appeals such denial, based upon the following reasons:

6

a) Section 405.070(G)(1)(d)(1) is unconstitutional, on its face and/or as applied to the Applications, under Missouri law. In particular, Section 405.070(G)(1)(d)(1) imposes ex post facto requirements upon lawful nonconforming elements of the Community contrary to settled Missouri law.

b) Sections 405.070(G)(1)(d)(2) is unconstitutional, on its face and/or as applied to the Applications, under Missouri law. In particular, Section 405.070(G)(1)(d)(2) amounts to an unconstitutional taking and is also a violation of substantive due process under established Missouri law.

c) Further, other portions of Section 405.070(G)(1)(a)-(d) and Section 405.070(G)(1)(d)(1)-(4) are, on their face and/or as applied to the Applications, unconstitutional and otherwise unlawful, including because it amounts to the imposition of ex post facto requirements upon lawful nonconforming elements of the Community.

d) In addition, Section 405.090(E) and Section 515.020(A), including any subsections therein, are, on its face and/or as applied to the Application, unconstitutional, including because it amounts to the imposition of ex post facto requirements upon lawful nonconforming elements of the Community.

Jeffco respectfully requests that this Board grant its Applications and, in addition, requests the Zoning Enforcement Officer forthwith transmit to the Board all the papers constituting the record upon which the appeal is taken, including, but not limited to all correspondence between Jeffco and/or its representatives and the City, and all applications and ancillary materials submitted to the City as part of the Applications.

(*id.* at 4).  Thus, Plaintiff asserted that § 405.070(G)(1)(d)(1)-(d)(2), other portions of §

405.070(G)(1)(a)-(d) and § 405.070(G)(1)(d)(1)-(4), and § 405.090(E) and § 515.020(A), were

unconstitutional or otherwise unlawful.

On August 8, 2022, Plaintiff amended its petition to include the following additional

claims:

To the extent that the Zoning Enforcement Officer relies on the definition of "replacement trailer" in Section 515.010, although not used elsewhere in the Code and not cited in the denial of the Applications, that Section is also unconstitutional, on its face and/or as applied to the Applications, because it

7

amounts to an unconstitutional taking and is also a violation of substantive due process under established Missouri law.

Furthermore, the Zoning Enforcement Officer's actions have resulted in prior deprivation of Jeffco's property. Because Jeffco has been unable to occupy lots within the Community or replace mobile homes within the Community as described above, it had to continue paying Jefferson County sewage fees for lots that it has been prevented from using. Specifically, until recently, Jeffco was forced to pay $30 per month per lot to the County for this service that is not being used due to the action of the Zoning Enforcement Officer described above. This amounts to at least $40,000 per year that was taken from Jeffco to avoid any argument that it has abandoned use of these lots, a loss for which Jeffco reserves all rights to seek recovery.

(Doc. 1-3 at 3; Doc. 1 ¶ 33).

On August 16, 2022, Plaintiff amended its petition a second time following communication with counsel for the City (Doc. 1-4 at 2-3; Doc. 1 ¶ 34). The second amended petition raises the same constitutional claims, stating: "The City, through its attorney Allison Sweeney, has claimed that Jeffco is not authorized to make constitutional arguments to the Board. This claim notwithstanding, Jeffco makes the following additional arguments for purposes of preservation of any and all claims against the City related to its denial of the Applications" (Doc. 1-4 at 3). The second amended petition adds the following non-constitutional claims of error:

1. **Inapplicability of Section 405.070(G).** Section 405.070(G)(1) only applies to communities within the MHD district that are "non-conforming due to lot size, setback, or other such characteristics." However, in regard to 2139 Park Drive, 2163 Lake Drive, and 2163 Park Drive, the condition precedent for this Section is not triggered, and the City cannot rely on it in denying any of the Applications because the Community has not been established as a nonconforming mobile home park for purposes of the Applications. The Applications for 2139 Park Drive, 2163 Lake Drive, and 2163 Park Drive do not rely on lawful nonconformities related to lot size, setback, or other such characteristics—an additional reason these Applications should not be denied. Notably, the requirements to be zoned "MHD" Mobile Home District as provided in Section 405.090 do not include a minimum "pad" size requirement, so any pad size

8

requirement cannot serve as a lawful basis for denying any of Jeffco's Applications for this additional reason. Thus, the City's denial of these three Applications was unlawful in this regard.

2. **Incorrect and Unlawful Application of the Code**. In denying the Applications, the City erred in its application of the Code to Jeffco's Applications in the following manner:

a) The City erred in not determining a lawful nonconforming use to exist under Sections 405.030 and 405.070(G).

b) The City erred to the extent that the Zoning Enforcement Officer relied upon, and applied to Jeffco's Applications, the definition of "replacement trailer" in Section 515.010 in its denial of the Applications.

c) The City erred in applying Sections 405.070(G)(1)(d)(1)-(4), 405.090(E), and Section 515.020(A), to Jeffco's Applications, as such application and enforcement of those Sections amounted to the imposition of ex post facto requirements upon lawful nonconforming elements of the Community.

(Doc. 1-4 at 2-3; Doc. 1 ¶ 34).

On August 24, 2022, the Board held a hearing and denied the appeal (*id.* ¶ 35).  A letter

dated August 25, 2022 and signed by the City's Senior Planner states:

The purpose of this letter is to officially inform you that on August 24, 2022, the Board of Adjustment ***denied*** your request pertaining to BA-2022-03, to appeal a decision, based upon Sections 405.070(G)(1)(d)(1-2), made by the Zoning Enforcement Officer for the purpose of seeking zoning approval of five mobile home placement permit applications within the Jeffco Estates Mobile Home Park at the subject parcel. The Board of Adjustment voted unanimously to uphold Staff's determinations on the five permit applications.

This concludes the City's appeal process. The decision of the Board of Adjustment may be appealed to the Circuit Court of Jefferson County by any persons of the municipality that may be aggrieved by the decision of the Board within 30 days after filing of this decision by the Board as set forth in Section 405.250.

(Doc. 1-5).

### C.  State Court Action[2]

On September 16, 2022, Plaintiff filed a state action against Defendants in the Circuit Court of Jefferson County, Missouri.  Plaintiff brought one claim pursuant to RSMo § 89.110 that Defendants had erred in their decisions (state count I) and three constitutional claims seeking a declaratory judgment (state counts II-IV).  On October 24, 2022, Defendants filed a motion to dismiss arguing that Plaintiff had not exhausted its administrative remedies by seeking a variance and, on October 27, 2022, Plaintiff filed its opposition.  On March 6, 2023, Plaintiff voluntarily dismissed the three declaratory judgment constitutional claims without prejudice.  The same day, Plaintiff brought this action, reviving those same claims before this Court (Counts I-III) and adding a 42 U.S.C. § 1983 equal protection claim (Count V) and a state law tortious interference claim (Count IV).

## II.  Legal Standard

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Subject matter jurisdiction is the power of a federal court to decide the claim before it.  *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017).  To dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "'the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.'"  *Swiish v. Nixon, No.* 4:14-CV-2089 CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)).  Plaintiff bears the burden

---

[2] The Court takes judicial notice of the state court litigation.  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

of proving jurisdiction exists.  *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).  "It is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (citations omitted).

**B.  Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678. (citation omitted).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  All reasonable references from

11

the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

"In considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003) (referring to writings that may be viewed as attachments to a complaint, such as the contracts upon which his claim rests). *See also Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) (citing Fed.R.Civ.P. 10(c) and noting that "written instruments attached to the complaint become part of it for all purposes" … "a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint."). A district court may also consider matters of public record. *Amoroso v. Gooch*, No. 2:20CV55 HEA, 2021 WL 1400952, at *11 (E.D. Mo. Apr. 14, 2021). Consequently, the factual allegations here are taken from Plaintiff's Petition, including its attachments.

## I. Analysis

### A. Motion to Dismiss

Plaintiff raises three claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 ("DJA") (Doc. 1 at 15-17). Count I asserts that §§ 405.070(G)(1)(a)-(d), 405.090(E), and 515.020(A) are unconstitutional on their face and violate substantive due process under the United States and Missouri Constitutions (*id.* at 15). Count II asserts that §§ 405.070(G)(1)(a)-(d) and 405.070(G)(1)(d)(1)-(4), 405.090(E), and 515.020(A), and the City and Board's conduct are unconstitutional as applied to Plaintiff (*id.* at 16). Count III asserts that §§ 405.070(G)(1)(a)-(d), both as applied and on its face, and §§ 405.090(E) and 515.020(A) amount to an

12

unconstitutional taking (*id.* at 17).  In addition to the DJA counts, Count V asserts an equal protection claim under 42 U.S.C. § 1983 (*id.* at 19).  Finally, Count IV asserts a purely state-law claim of tortious interference (*id.* at 18).

Defendants argue that Counts I-III should be dismissed because Plaintiff failed to exhaust its administrative remedies by challenging the legislative constitutionality of certain provisions of the City Code instead of seeking the proper administrative remedy of a variance (Doc. 8 at 2). They further argue that Counts IV and V are "ancillary" to Counts I-III and should therefore be dismissed (*id.* at 1).  In the alternative, they argue that this action should be dismissed for want of jurisdiction because § 405.204(G) contains the exclusive remedy of seeking administrative redress of any decision of the City's zoning enforcement officer, rendering Plaintiff's failure to exhaust that remedy jurisdictional (*id.* at 3).

Plaintiff argues that it is entitled to appeal the decision of the Board if it is illegal and to bring separate claims for relief before this Court without being limited to any administrative remedies (Doc. 9 at 5).  Plaintiff further argues that there is "nothing within the Board or the City's power to do that Plaintiff has not already asked them to do" (*id.* at 4).  Plaintiff argues that a variance would not have delivered to Plaintiff the relief it sought and is not a sustainable long-term solution for the problems Plaintiff seeks to redress through this action (*id.* at 5).  Plaintiff argues a variance would not correct the City's error in denying the Applications, would be an "illusory" remedy, and would require Plaintiff to concede the constitutionality of the ordinance (*id.* at 8).  Plaintiff argues that if it were required to seek a variance and the variance was granted, Defendants would then argue Plaintiff could not file a lawsuit for lack of an injury even though a variance does not provide full relief (*id.*).

The Court begins by noting that the briefing in this action resembles the briefing in the state court action.  Although Plaintiff now brings predominantly federal claims in federal court pursuant to federal question jurisdiction, the parties continue to treat this action as if it were being litigated in state court, failing to cite to relevant federal law.  The Court expects that the parties will remedy this going forward.

The doctrine of ripeness, not exhaustion of administrative remedies, is applicable here. "The question whether administrative remedies must be exhausted is conceptually distinct … from the question whether an administrative action must be final before it is judicially reviewable." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985), *overruled in part by Knick v. Twp. of Scott*, 139 S.Ct. 2162 (2019) (dispensing with state-litigation requirement).  "While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Id.* at 193.

"The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction." *Dakota, Minn. & E. R.R. Corp. v. S.D.*, 362 F.3d 512, 520 (8th Cir. 2004).  "The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000).  "The touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant

judicial intervention." *Vogel v. Foth & Van Dyke Assocs., Inc.*, 266 F.3d 838, 840 (8th Cir. 2001) (internal quotation omitted).  The general ripeness inquiry concerns "the fitness of the issues for a judicial decision and the hardship to the parties of withholding court consideration." *Neb. Pub. Power Dist.*, 234 F.3d at 1038 (internal quotation omitted).

For land-use challenges like Plaintiff's claims, the Supreme Court has stated a more specific ripeness inquiry.  "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson*, 473 U.S. at 186.  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the developer of a country club sought approval of its development plan from the Williamson County Regional Planning Commission and—after intervening changes in the zoning ordinances led to a denial of approval—appealed to the County Board of Zoning Appeals. *Id.* at 176-82.  The developer sought a ruling that the ordinance in effect in 1973 should apply but did not seek a variance from the requirements of either the 1973 or 1980 ordinances. *Id.* at 188-89.  The Supreme Court found that the process the developer had pursued was insufficient.

In *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, the Court rejected as unripe a takings challenge to the Surface Mining Control and Reclamation Act, reasoning:

> There is no indication in the record that appellees have availed themselves of the opportunities provided by the Act to obtain administrative relief by requesting either a variance from the approximate-original-contour requirement of § 515(d) or a waiver from the surface mining restrictions in § 522(e). If [the property owners] were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions. The potential

> for such administrative solutions confirms the conclusion that the taking issue
> decided by the District Court simply is not ripe for judicial resolution.

452 U.S. 264, 297 (1981) (quoted by *Williamson*, 473 U.S. at 187). Analogizing to *Hodel*, the Court found that while the developer had submitted a development plan, neither the developer nor respondent[3] had then sought "variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations." *Williamson*, 473 U.S. at 188.

The Court rejected respondent's argument that it "did everything possible to resolve the conflict with the commission" and that the Commission's denial of approval was equivalent to a denial of variances. *Id.* The Court found that until the Commission determined that no variances would be granted, it would be impossible for a jury to find whether respondent would be unable to derive economic benefit from the land. *Id.* at 191. The Court held:

> [R]esort to the procedure for obtaining variances would result in a conclusive
> determination by the Commission whether it would allow respondent to develop
> the subdivision in the manner respondent proposed. The Commission's refusal to
> approve the preliminary plat does not determine that issue; it prevents respondent
> from developing its subdivision without obtaining the necessary variances, but
> leaves open the possibility that respondent may develop the subdivision according
> to its plat after obtaining the variances. In short, the Commission's denial of
> approval does not conclusively determine whether respondent will be denied all
> reasonable beneficial use of its property, and therefore is not a final, reviewable
> decision.

*Id.* at 193-94. In other words, generally, "a developer must at least resort to the procedure for obtaining variances and obtain a conclusive determination by the Commission whether it would allow the proposed development in order to ripen its takings claim." *Suitum v. Tahoe Reg'l Plan.*

---

[3] Respondent Hamilton Bank of Johnson City was the successor in interest to the land developer.

*Agency*, 520 U.S. 725, 737 (1997) (internal quotations and citations omitted).  The Eighth Circuit

Court of Appeals has applied the *Williamson* finality requirement to due process and equal

protection claims relating to land use.  *See McKenzie v. City of White Hall*, 112 F.3d 313, 317

(8th Cir. 1997); *Christopher Lake Dev. Co. v. St. Louis Cty.*, 35 F.3d 1269, 1273 (8th Cir. 1994);

*see also Missouri ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1337–38

(8th Cir. 1997).

The *Williamson* finality requirement applies to Plaintiff's as-applied constitutional claims

(Counts II, III, and V).[4]  It does not apply to Plaintiff's facial substantive due process claim

(Count I).  *See Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 736 n.10 (1997) (noting facial

challenges "are generally ripe the moment the challenged regulation or ordinance is passed");

*Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 242 (1st Cir.

1990) (reversing district court decision that "arbitrary, capricious and unreasonable" facial

---

[4] Count III includes the following assertion: "The City Code, specifically Section 405.070(G)(1)(a)-(d) (as applied and *on its face*) and Sections 405.090(E) and 515.020(A), does not substantially advance legitimate state interests and thereby effects a regulatory taking of Plaintiff's Property, for which compensation must be paid." (Doc. 1 ¶ 86) (emphasis added). This offhand inclusion of the term "on its face" is insufficient to render Count III a facial claim. Count III refers exclusively to the effect on Plaintiff's Property.  *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494 (1987) (a facial takings challenge is "a claim that the mere enactment of a statute constitutes a taking" whereas an as-applied claim is one "that the particular impact of government action on a specific piece of property requires the payment of just compensation.").  Moreover, a freestanding "does not substantially advance" theory is no longer available in Fifth Amendment takings claims.  *See S. Grande View Dev. Co., Inc. v. City of Alabaster, Alabama,* 1 F.4th 1299, 1311–12 (11th Cir. 2021) (recognizing abrogation of freestanding "substantially advances" test by *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528 (2005)).  And such a theory is essentially duplicative of Plaintiff's facial substantive due process claim.  *See Lingle*, 544 U.S. at 540 (concluding that the "substantially advances" test "prescribes an inquiry in the nature of a due process, not a takings, test and that it has no proper place in our takings jurisprudence").

substantive due process challenge to zoning ordinance was not ripe due to failure to seek variances).[5]

Plaintiff bears the burden of proving jurisdiction exists. *Buckler*, 919 F.3d at 1044.  "It is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).  Here, Plaintiff argues that there is nothing within the Board or the City's power to do that Plaintiff has not already asked them to do (Doc. 9 at 4).  But that is not true. The Board has the power to grant a variance and Plaintiff did not seek one.

Plaintiff does not argue that any request for a variance would have been futile. *See* Doc. 9.  Plaintiff does not even argue, as respondent did in *Williamson*, that the denial of the Applications was equivalent to a denial of variances. *See id*.  Plaintiff merely argues that a variance would not give it the "full" relief it seeks: a declaration that the challenged ordinances are unconstitutional. *See id.* at 5, 8.  Plaintiff argues that, if the Board granted a variance, that would moot its lawsuit, see *id.* at 8, as though that were an argument against application of the ripeness doctrine.[6]  But that is the very essence of the ripeness doctrine—to avoid constitutional

---

[5] To the extent Plaintiff brings its facial substantive due process claim pursuant to the Missouri State Constitution, that claim survives as well. *See Duffner v. City of St. Peters*, 482 S.W.3d 811, 817–18 (Mo. Ct. App. 2016) (attack on the validity of a zoning ordinance, including substantive due process challenge, does not require exhaustion pursuant to RSMo § 89.110); *see also Owydat v. City of St. Louis*, No. 4:20-CV-388 NAB, 2023 WL 245555, at *5–7 (E.D. Mo. Jan. 18, 2023) (discussing *Duffner*).

[6] Plaintiff also argues that seeking a variance would require it to concede the constitutionality of the ordinance (Doc. 9 at 8).  Not so. *Duffner*, 482 S.W.3d at 820-21 (rejecting city's argument that appellants conceded the validity of the ordinance by applying for and receiving a variance); *id.* at 820 (noting that the church in the *St. Johns* case raised its constitutional claims when applying for a variance).

questions when an administrative solution is still available.  As the Supreme Court stated in *Hodel*, "[i]f [the property owners] were to seek [a variance or a waiver], a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions" and "[t]he potential for such administrative solutions confirms the conclusion that the taking issue … simply is not ripe for judicial resolution."  452 U.S. at 297.  The Court finds that Counts II, III, and V are not ripe and should therefore be dismissed.

Finally, the Court finds that Plaintiff's state law tortious interference claim (Count IV) should also be dismissed.  A board of adjustment functions in an administrative or quasi-judicial capacity, and its decisions are reviewed pursuant to statutory mandate.  *Duffner*, 482 S.W.3d at 816-17.  RSMo § 89.110 provides the exclusive remedy for a party aggrieved by a decision of the board of adjustment.  *Id.*  The gravamen of Count IV is an attack on Defendants' denial of the building permits.  *See* Doc. 1 ¶ 94.  Therefore, Plaintiff is currently exhausting its only available remedy—a suit in circuit court pursuant to § 89.110.  *See Owydat*, 2023 WL 245555 at *5 (finding that plaintiffs' claims focused on defendants' conduct in rendering the board of adjustment's decision and in denying and/or revoking the occupancy permit, dismissing all claims except plaintiffs' § 89.110 claim, and remanding to state court).

### B.  Motion to Exercise Supplemental Jurisdiction

Defendants request that this Court exercise "supplemental jurisdiction" over the related state court action (Doc. 21).  As authority, Defendants cite 28 U.S.C. § 1367.  With exceptions not relevant here, § 1367 provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). Supplemental jurisdiction applies to claims asserted in a pending federal-court case. 13 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3523.2 (3d ed. Apr. 2023 Update). Defendants have cited no other authority for the proposition that this Court may exercise jurisdiction over a related state court action. The Court will deny Defendant's Motion.

### C. Abstention

Only one claim remains before this Court—Plaintiff's facial substantive due process claim under the DJA (Count I). "*Pullman* abstention does not require that the court defer to the wishes of the parties and may be raised by the court *sua sponte*." *Sisney v. Kaemingk*, 15 F.4th 1181, 1190 n.2 (8th Cir. 2021) (internal quotations and citations omitted). In *Pullman*, the Supreme Court determined that abstention was appropriate because the complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open" and "[s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 498 (1941). "*Pullman* abstention requires consideration of (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations." *Beavers v. Arkansas State Bd. of Dental Examiners*, 151 F.3d 838, 841 (8th Cir. 1998). "*Pullman* requires a federal court to refrain from

exercising jurisdiction when the case involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds." *Burris v. Cobb*, 808 F.3d 386, 388 (8th Cir. 2015) (quoting *Moe v. Brookings Cty.,* 659 F.2d 880, 883 (8th Cir. 1981)). "Abstention is proper in limited areas, for example, when a federal constitutional issue might be mooted by a state-court determination of pertinent questions of state law." *Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625, 628 (8th Cir. 1985).

Here, there is a state court action filed prior to this action that is currently pending in the Circuit Court of Jefferson County, Missouri.  The exact same parties are involved.  Plaintiff's factual allegations resemble those before this Court, and Plaintiff asserts as follows in its remaining state court claim:

## COUNT I

### (Writ of Certiorari, RSMo § 89.110)

32. Plaintiff incorporates and realleges each of the preceding paragraphs of this Petition as if fully restated herein.

33. The City's decision to deny Plaintiff's Applications was in error and not in accordance with the City Code. The Board's subsequent affirmation of this denial was also in error.

34. First, the part of the City Code relied on by the City in denying Plaintiff's Applications—Section 405.070(G)(1)—only applies to manufactured home communities within the MHD district that are "non-conforming due to lot size, setback, or other such characteristics." The Property, however, has not been established as a nonconforming manufactured home community for purposes of the Applications, and any reason contained within City Code Section 405.070(G)(1) cannot serve as a basis for denying the Applications.

35. Moreover, the requirements to be zoned "MHD" Mobile Home District as provided in Section 405.090 do not include a minimum "pad" size

requirement, so any pad size requirement cannot serve as a lawful basis for denying any of Plaintiff's Applications for this additional reason.

36. Second, the City's denials of Plaintiff's Applications fail to follow the City Code regarding lawful nonconforming uses.

37. Section 405.030 of the City Code defines a nonconforming land use or structure as "[a] land use or structure which existed lawfully on the date that this zoning ordinance or any amendment thereto became effective and which fails to conform to one (1) or more of the applicable regulations in the zoning ordinance or amendment thereto."

38. The same section defines "structure" as:

Any assembly of material forming a construction for occupancy or use, excepting, however, utility poles and appurtenances thereto, underground distribution or collection pipes or cables and underground or ground level appurtenances thereto.

39. The setback and concrete pad requirements relied on by the City in denying the Applications does not directly have to do with a structure but rather other elements associated with structures. However, when applying a nonconforming use or structure to a manufactured home community specifically, the City Code appears to define it as both a park and a "home." Code § 405.070(G).

40. The City's Code does not define "parts of mobile home parks" or "pads." But "lots" are defined as "a platted parcel of land intended to be separately owned, developed, and otherwise used as a unit" or "a lot which is part of a subdivision, the plat of which has been legally approved and recorded in the office of the Recorder of Deeds of Jefferson County or a parcel of land which was legally approved, and the deed recorded in the office of the Recorder of Deeds." Code § 405.030 (Definitions).

41. The Property does not have multiple individual "lots" as defined in the City Code.

42. The City has thus incorrectly applied its own nonconforming use rule (Code § 405.030) in denying the Applications and refusing to allow Plaintiff to continue its lawful nonconforming use of the Property.

43. In the alternative, the Property as a whole is a conforming use, i.e., used appropriately to its zoning classification as an MHD. The pads are part of the Property. They are not structures under the City Code's definition.

22

44. Therefore, the pads are conforming because the Property is conforming. As such, the City cannot apply the nonconforming use special rules in City Code Section 405.070(G).

45. This count is brought pursuant to Section 89.110 of the Missouri Revised Statutes.

46. Less than thirty (30) days has elapsed since the Board denied Plaintiff's appeal in this matter.

47. The Board's denial of appeal of the Applications is erroneous, unlawful, and unconstitutional.

48. Accordingly, Plaintiff prays for an order directing the Board to fulfill its duty and reverse its denials of Plaintiff's Applications.

(State Petition, filed September 16, 2022, Case Number 22JE-CC00749).

The Court finds that *Pullman* abstention is appropriate.  Plaintiff is currently pursuing an available state remedy that has the potential to clarify the meaning and applicability of the ordinances at issue and to thereby materially alter the need for a decision on federal constitutional grounds.  *See Ziegler v. Ziegler*, 632 F.2d 535, 539 (5th Cir. 1980) (where a state action is already pending the argument in favor of abstention is more compelling).  For example, the ordinance appears inconsistent as to the universe of non-conforming mobile home parks to which subsection (d) applies.  Section 405.070(G)(1) provides that "*[m]obile home parks located in 'MHD' Mobile Homes Districts that are non-conforming due to lot size, setback, or other such characteristics* shall be subject to the following special provisions." (Doc. 1 ¶ 30) (emphasis added).  However, special provision (d) seems to contradict that preamble with its own, stating "*[n]otwithstanding other provisions* of the "MHD" Mobile Homes District regulations to the contrary, *mobile home parks that are located within "MHD" Mobile Home Districts that existed at the time of adoption of this Chapter* shall meet the following minimum requirements." (*id.*)

23

(emphasis added).  *See Robinson v. City of Omaha, Neb.*, 866 F.2d 1042 (8th Cir. 1989)

(ordering *Pullman* abstention where state law claim could establish applicability of local

ordinance at issue and whether it conflicted with state law); *United for Missouri v. St. Charles

Cnty.*, No. 4:17-CV-2405 CAS, 2017 WL 6026002 (E.D. Mo. Dec. 5, 2017) (same).  Before

wading into an area that is peculiarly the purview of state and local policy with little

interpretative guidance, the Court would like to allow the state court to weigh in.  Finally, the

Court notes that this action does not involve the kind of special constitutional considerations that

would counsel against *Pullman* abstention.  *See Sisney*, 15 F.4th at 1190 n.2 (*Pullman* abstention

disfavored in cases involving facial challenges to state law under the First Amendment); *Harman

v. Forssenius*, 380 U.S. 528, 537 (1965) (*Pullman* abstention disfavored in cases involving "a

claimed impairment of the fundamental civil rights of a broad class of citizens").[7]  The Court

will stay this matter pending resolution of Plaintiff's state court claim.  *Coley v. Clinton*, 635

F.2d 1364, 1377 (8th Cir. 1980) ("[T]he proper procedure after Pullman-type abstention is for

the district court to retain jurisdiction.").

## IV.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is

**GRANTED IN PART** and **DENIED IN PART**.  Counts II, III, and V are **DISMISSED,**

---

[7] While the Court does not abstain pursuant to the *Wilton/Brillhart* abstention doctrine, as the issues in the state court action are not substantially the same, the Court notes that the DJA confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); 28 U.S.C. § 2201(a) (providing that a court "may declare the rights and other legal relations of any interested party seeking such declaration").

**without prejudice**.  Count IV is **DISMISSED, with prejudice**.

   **IT IS FURTHER ORDERED** that Defendants' Motion for the Court to Exercise

Supplemental Jurisdiction (Doc. 21) is **DENIED**.

   **IT IS FURTHER ORDERED** that this matter is **STAYED** pending resolution of

Plaintiff's state court claim.

   **IT IS FURTHER ORDERED** that the parties shall provide the state court with a copy

of this Order.

   **IT IS FINALLY ORDERED** that the parties shall update the Court with a joint status

report every ninety (90) days and notify the Court promptly upon resolution of Plaintiff's state

court claim.

   Dated this 29th day of December, 2023.

                                                    /s/ Noelle C. Collins
                                                   NOELLE C. COLLINS
                                                   UNITED STATES MAGISTRATE JUDGE